Read, J.
This is a bill filed to redeem a mortgage, for specific *367 elocution of a contract, to declare a trust, and for an account of rents and profits, in reference to the same premises.
Decree was rendered for complainants, in all aspects of the bill, at the term of the Supreme Court in Licking county, 1842, and was referred to a master to take an account of rents and profits, valuable lasting improvements, and the amount due on the mortgage. At the term of the Supreme Court, 1843, the cause was continued on exceptions to master’s report, and referred to a master to take an account of rents and profits of the last year. The cause coming up at the term of the Supreme Court, 1844, on master’s report, motion was made by William Stanbery, one of the defendants, to open up the decree of 1842, and look to the original equities; upon which motion the case was reserved to court in bank.
*This presents a preliminary question of practice, as to whether the court at this late period will entertain a motion to open up the decree of 1842. Counsel for complainants regard the decree of 1842, settling the equities of the cause, as final, only to be set aside upon petition for rehearing, or upon review for errors of law, or newly discovered matter since former decree.
The question depends wholly upon the fact whether the decreo of 1842 was final, or interlocutory; and if final, whether it was still under the control of the court for modification, correction, or to be set aside, as equity and good conscience might require.
The distinction between final and interlocutory decrees is oftentimes exceedingly nice, yet of most important consideration in practice, as the kind of proceeding to be had after a decree depends upon its character. When to take appeals, the time limited for petitions for rehearing, or bills' of review, or whether to question the decree on motion, or by original proceeding, are all involved. A want of observing at all times the distinction between final and interlocutory decrees, has induced some doubt and uncertainty in practice.
A decree is final which disposes of the whole merits of the cause, and leaves nothing for further consideration of the court. A decree is interlocutory which finds the general equities, and the cause is retained lor reference, feigned issue, or consideration, to ascertain some matter of fact or law, when, again, it comes under the consideration of the court for final disposition. When no further action of the court is required, it is final; when thr >,ause is retained *368 for further action, it is interlocutory. Further decrees and orders of the court sometimes become necessary to carry into effect the rights of parties fixed by final decree ; and final decrees oftentimes ■direct an act to be done, as in case of specific performance, that on payment of the purchase money as specified in the final decree, the vendor shall execute a deed ; or, in case of redemption, that on payment of the money due, the mortgage be canceled, and even sometimes all the rights of the parties being found, *and all the consequences to flow from a certain fact having been finally determined, a reference as to such fact may be had to a master, and still the decree be final. The confusion has sprung up from failing to observe .the distinction between facts and things to be ascertained preparatory to final decree, and facts and things to be ascertained in execution of final decree. Because a final decree might direct that certain facts should be ascertained in execution of such decree, it will not make it interlocutory; nor, on the other hand, because a decree finds the general equities of the cause, and reference is had to a master to ascertain facts preparatory to ■final disposition, will it be regarded as final. It seldom happens that a first decree can be final to conclude the cause, and yet, in all cases, the general equity should be found, and the principles laid down for the government of the master, before reference had. But such decrees are never held to be final. Indeed, it is remarked by Judge Spencer, in Jaques v. Methodist Episcopal Church, 17 Johns. 548, that no case can be found in which a decree directing a reference to a master, or a feigned issue, for the purpose of ascertaining a material fact, has been held final. But under the practice of our courts, a decree finding the general equities of the case for the purpose of reference, etc., has been held final to support an appeal, but for no other purpose. In case of a final decree, an ap.peal of course brings up the whole merits of the cause. Proceeding upon the principle that a party may question the finding of the general equity, he can appeal from a decree which may possibly dispose of the case without the expense of reference or further proceeding, or may await the final action of the court, and then appeal if it be desired.
In all cases where the decree is interlocutory, the whole merits of the cause are before the court for consideration, and it is their duty to render such final decree as equity and good conscience, from a view of the whole case, may require. Even final decrees *369 whilst they rest in paper, or before enrollment, are within the control of the court for modification, alteration, or to be set aside. And in our state, final decrees *are always under the control of the court during the term at which they were rendered, the term being but one day for the purposes of justice.
The decree of 1842 was not final, and the whole cause is before the court, and we must therefore look into the original merits and equities of the controversy.
The ‘bill charges that Leonard Kelley, the complainants being his widow and heirs, on October 25, 1826, purchased the land in controversy from Jonas and Lucy Stanbery; that to secure tho payment of the purchase money, 6800, five several promissory notes were executed, made payable to William Stanbery, the last of which fell due on October 25, 1832 ; and to secure said notes a mortgage deed was executed to said William Stanbery upon said land ; that Leonard Kelley died in February, 1832, before tho last payment fell due ; that on September 28, 1832, William Stanbery sold said land to Howell Phillips, by deed, in fee simple, without the knowledge or consent of said complainants, and without foreclosing said mortgage; that Phillips, taking advantage of the temporary absence of the widow and the tender age of the children, obtained possession, ejected complainants, and has held and enjoyed the premises ever since.
That after the purchase Leonard Kelley and complainants made large and valuable improvements, for which neither Stan* bery nor Phillips have made any compensation, and now retain and enjoy the benefit; that the mortgage is still unforeelosed and unsettled; that it was duly recorded in Licking county shortly after Stanbery received it; that Phillips had full notice of all tho rights of complainants when he purchased. Prays deed from Jonas and Lucy Stanbery, to be allowed to redeem; an account of rents and profits against Phillips, and on payment of balance duo on mortgage, that William Stanbery and Phillips be decreed to convey to complainants.
Phillips, in his answer, denies all knowledge of the mortgage, or of any claim of title on behalf of complainants; but *admits they were in possession, and that he obtained possession whilst Mrs. Kelley was absent from home; that he did not eject them, but permitted them peaceably to occupy until the next March, when they left of their own accord.
*370 William Stanbory, in his answer, claims that he was the owner of the land prior to 1826, and that Leonard Kelley was, some time previous,.his tenant; that Kelley failing to make certain repairs agreed upon as tenant, excused himself upon the ground that his boys, of whom he had several, would not assist him; that if he could buy tho place his boys would work and help him pay for it; that thereupon respondent, Stanbery, sold the place to Kcdley for tho amount described in the bill, at the same time took the mortgage from Kelley charged in the bill, and drew a deed, intended to bo signed by respondent and wife, and Jonas and Lucy Stanbory, the latter of whom lived in an adjoining county, conveying said land to said Kelley; that the respondent neglected to get the last-named deed executed, and that it never was so executed and delivered to Kelley for tho land.
But by way of defense, Stanbery sets up that Leonard Kelley, in his lifetime, agreed, by parol, to give up to him the land without any consideration or pay for the improvements.
That he gave to Mrs. Kelley, the widow of Leonard Kelley, as it mere gift — not as compensation for any rights she had therein— fifty acres of land in Knox county; that he sold to the two eldest boys fifty acres more, and obtained from them a promise to move ■on tho land and improve it, and support their mother. Claims that Kelley’s heirs had no interest in the land, and no right to redeem; that the improvements were small, and paid for by the use •of tho land ; that no deed was ever made to Kelley, and that he consequently had no title; that he released to Mrs. Kelley, administratrix of tho estate, all claim under tho mortgage. Admits ■that he sold tho land to Phillips, and received full value.
The mortgago which William Stanbery took from Kelley recites that it was executed to secure tho consideration money for the land sold to Leonard Kelley.
*Jonas and Lucy Stanbery havo not answered, or in any ■way appeared, and, it seems, havo no interest in the matter ; but such decree may be taken, by way of precaution, as. will secure to complainants any title said Jonas and Lucy may have in said land.
This case is wholly without tho statute of frauds, by the recital in the mortgage, and the admissions in the answer of Stanbery, that the land was sold, possession taken, improvements made, and a mortgage executed to secure the payment of the purchase *371 money, and that a deed of the land was to have been made to Kelley, which was not done, solely from the neglect of Stanbery, the respondent.
How can Stanbery resist the right of complainants to redeem and assert their equity to the land in controversy?
Will he say that the mortgage was given to secure the purchase money, and the right of redemption involves the specific execution of a contract for the sale of real estate, which' a court of equity will not enforce after such a lapse of time, and after other persons have acquired an interest in the land?
It is not admissible to set up the defense that Kelley had no title, because the mortgagee is estopped to deny title in the mortgagor, on bill filed by him or his representatives, to redeem. Besides, the fact that Kelley had not a deed, is from the neglect of Stanbery, and he is not permitted to take advantage of his own wrong; and equity regards that as done which should have boon done. The fact that this mortgage was given to secure the payment of the purchase money, does not, in this respect, alter the case. Because, had the deed been executed, the right to redeem would have been unquestioned. Had the purchase money been paid, the right to a decree for a deed would have been equally certain. Thus, whilst respondent, Stanbery, is estopped from the relation of mortgagee and the maxim of equity, that a man shall not take advantage of his own neglect or wrong, to deny title to prevent a redemption; he, at the same time, will be compelled to do what he should have done, and execute a title to the land.
*But Stanbery insists that Leonard Kelley gave up the land, by parol agreement, in his lifetime; and hence that the mortgage, and right to a decree for title, are both gone, and that in consequence thereof the mortgage claim was since released.
First, this is an agreement without consideration, and not binding ; and, secondly, is within the statute of frauds, and void. No interest in land, equitable or otherwise, passes by parol only. True, a parol agreement executed by possession taken, will be enforced. But an equitable interest, once acquired in land, can not be parted with except by writing, or by the same means that it was acquired, which is not pretended in this case. Besides, it is proven that long since Kelley’s death, Stanbery admitted the interest of Kelley’s heirs in the land. As to his subsequent conduct toward the widow and children, in giving'the widow fifty ac.’es of *372 land in Knox county, as he avers in his answer, it was a mere gift, and the fifty acres to the boys was a sale; no defense arises, as it was the result of generosity in the one case, and a sale in tho other, and not the consideration of the relinquishment, of aright.
Stanbery, then,'has no defense to the redemption, or to a decree for title. How'does Phillips stand? Phillijos came in under Stanbery whilst complainants were in possession of tho promises, and therefore was charged in equity with full notice of the nature and extent of complainants’ rights, and stands in no better situation than Stanbery.
The complainants, therefore, have the right to redeem, and toa decree for title.
But, as Phillips has paid for the land, and as no one appears to have any interest in the mortgage but Stanbery, although there is some suggestion of an assignment to one Hillbrand, he is entitled to the money duo on the mortgage, to be paid on redemption, and to such valuable, lasting improvements, as he has put upon the premises.- He came in under color of title, and, by analogy to the occupying claimant law, he is entitled to compensation for improvements.
ffe have examined the reports of the masters, and, for the purposes of correction, referred tho whole.matter again to a master, to state an account, on the following principles :
*1. To ascertain the money due on the mortgage.
2. To take an account of tho annual rents and profits of the premises since Phillips came into possession.
3. To apply such rents and profits to the payment of interest on the mortgage debt, and any balance to the reduction of the principal; making rests annually in the calculation of interest on tho mortgage debt, when the annual rents and profits more than extinguish the interest on such debt.
4. To take an account of valuable, lasting improvements, put upon the premises by Phillips, and add tho same to the balance due on the mortgage,'after deducting rents and profits, as above specified.
The amount so found is to be paid over to Phillips, as directed in the decree, and, upon payment, title is to be made to complainants. Decree entered accordingly.